367 So.2d 342 (1979)
STATE of Louisiana
v.
Cuong NGUYEN.
No. 62778.
Supreme Court of Louisiana.
January 29, 1979.
Elizabeth W. Cole, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Robert T. Myers, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.[*]
The issue of law presented in this case is whether a defendant who is employed by the owner of stolen property to regain the property commits the crime of receiving stolen things by accomplishing his mandate.
Defendant, Cuong Nguyen, was charged by bill of information with theft of property valued at $500.00, La.R.S. 14:67, and receiving stolen things valued at $175.00, La.R.S. 14:69. After a trial, a jury convicted defendant of attempted receiving stolen *343 things, La.R.S. 14:27 and 69, but found him not guilty of theft. The court imposed a suspended six month jail sentence and placed the defendant on supervised probation.
Defendant's principal contention in this Court is that the trial judge erred in denying his motion for a new trial because there was no evidence of certain elements of the crime charged.
Because the witnesses in this case spoke only Vietnamese, the prosecution and defense agreed to stipulate the substance of their testimony, rather than to require its transcription and translation. The stipulation is as follows:

"STATEMENT OF FACTS AGREED UPON BY STATE AND DEFENSE
"It is hereby agreed by the State and defense that the following facts were in evidence at the trial of this matter held on April 17, 1978, and were not in dispute. It is further agreed by both parties to dispense with the necessity of a complete transcript for purposes of appeal to the Supreme Court of Louisiana.
"Mr. Trong Van Tran testified that his store, the Saigon Shop, was burglarized on December 24, 1977, and that among the items missing were watches and a pendant of a dragon. An invoice was submitted into evidence that he had paid $50 wholesale for the pendant.
"Several days after this event, the defendant came into the store with a pendant for which he wanted Mr. Van Tran to make a new chain. Mr. Van Tran recognized the pendant as being the one stolen from his store. He did not apprise Mr. Nguygen [sic] of this fact until he came again to the store to pick up the pendant. Upon learning that the pendant belonged to Mr. Van Tran, Mr. Nguygen told him he wished him to keep it. Mr. Van Tran then asked if he would be willing to try to find and return to him the other things missing in the burglary. Mr. Nguygen agreed to do so by finding the person who had originally sold the pendant to his landlady. Mr. Van Tran gave him $500 for this purpose.
"On January 18, 1978, Mr. Nguygen returned to the store with a watch that he told Mr. Van Tran he had purchased for $100, but that was the only item he was able to buy. He then gave Mr. Van Tran $300 and the watch. Mr. Van Tran told Mr. Nguygen that the watch was not one that came from his store. However, his testimony was that he had since determined from serial numbers that the watch was his.
"Mrs. Van Tran testified. A taped phone conversation between the defendant and Mrs. Van Tran, which took place after defendant's arrest, was introduced into evidence. In that conversation she stated that the watch did not belong to her but that she wanted to keep it. She also stated that she had given him $500, $100 of which he used to purchase the watch, $300 which he returned to the Van Trans on January 18, 1978, and $100 which she intended for him to keep for his efforts on their behalf.
"Mr. Nguygen testified in his own behalf. He stated that he had purchased the pendant from his landlady who had offered it to him as a gift. Upon realizing its value, he insisted on paying her $50, which he did. He took the pendant to the Saigon Shop, which he knew to belong to Mr. Van Tran, whom he had known casually in Vietnam. On the second visit to the Shop to pick up the pendant he had left, Mr. Van Tran told him that the pendant was his. Mr. Nguygen told him where he had gotten it and the Mr. Van Tran should keep it. Mr. Van Tran and his wife then asked Mr. Nguygen to assist them in recovering the other stolen items which he agreed to do.
"Mrs. Sinh Thi Nguyen (no relation), Mr. Nguygen's landlady, testified that she sold the pendant to him after receiving it from Mrs. Ha Thi Nguygen as a gift for her kindness in providing her family with room and board. Mrs. Ha Thi Nguygen testified that she and her husband had received the pendant and the watch from a man in Jackson Square, that she gave the pendant to Mrs. Sinh Thi Nguygen as a gift and that she sold the watch to Mr. Nguygen at his request for $100." *344 Since the foregoing recapitulation of the testimony constitutes all of the evidence designated for our review, the question of whether there was evidence of each essential element of the crime must be decided solely on the basis of the stipulation.
La.R.S. 14:69, in pertinent part, provides:
"Receiving stolen things is the intentional procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
"* * *."
Accordingly, this Court has held that the crime consists of four elements:
"(1) [T]he intentional procuring, receiving, or concealing
"(2) of anything of value
"(3) which has been the subject of any robbery or theft
"(4) under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses." State v. Walker, 350 So.2d 176, 177 (La.1977).
Mere possession of stolen property does not create a presumption that the person in possession of the property received it with the knowledge that it was stolen by someone else; the state must prove that the accused actually knew or had good reason to believe that the property was stolen before a conviction under La.R.S. 14:69 can be obtained. State v. Walker, 350 So.2d 176 (La.1977); State v. Henderson, 296 So.2d 805 (La.1974); State v. Rock, 162 La. 299, 110 So. 482 (1926).
Eminent criminal law treatise writers have observed that the crime of receiving stolen property requires the prosecution to prove additionally, although most statutes do not specifically mention it, that the receiver intended to deprive the owner of his property. W. R. LaFave and A. W. Scott, Criminal Law, § 93 (1972); 2 Wharton's, Criminal Law and Procedure, § 567 (1957); Clark and Marshall, Crimes, § 12.39 (7th ed. 1967); cf. R.M. Perkins on Criminal Law, p. 329 (2d ed. 1969).
These scholars also maintain that it is essential to the commission of the crime of receiving stolen property that the property in question be "stolen" at the moment the defendant receives it. If at the time of the alleged offense the property, although previously stolen, has lost its stolen character through a recovery by the owner or his agent, the receiver cannot be held guilty. 2 Wharton's Criminal Law and Procedure, § 573 at p. 293 (1957); Clark and Marshall, Crimes, § 12.38 (7th ed. 1967); R. M. Perkins on Criminal Law, p. 326 (2d ed. 1969).
In the instant case, the defendant was accused of receiving two stolen things, viz., a pendant of a dragon and a watch. The stipulated evidence clearly established that both of these valuable articles had been the subject of a theft during the burglary of Mr. Van Tran's store. It was also agreed by the parties that the defendant intentionally received or procured each item after the burglary of the store. However, from this point the defendant's receipt of each article must be analyzed separately to determine if there was any evidence of the other essential elements of the crimes charged.
It is readily apparent that there was no evidence that the defendant actually knew or had good reason to believe that the dragon pendant had been stolen before he received it. The defendant's proof of a legitimate chain of transfers between himself, his landlady and fellow tenant was unrefuted. When the accused was apprised that the pendant had been stolen it was in Mr. Van Tran's possession. The defendant made no attempt to procure or receive the pendant after he had been given good reason to believe that it had been the subject of a theft.
On the other hand, the defendant was certainly aware that the watch had been the subject of a theft before he received it from the same tenant who sold the pendant to his landlady. However, there is no evidence that the defendant intended to deprive Mr. Van Tran of the watch. Moreover, *345 the parties have stipulated facts which clearly show that the defendant acted as the agent of Mr. Van Tran, the owner, and not for himself, in receiving or procuring the watch. Accordingly, at the time the defendant took the watch into his possession it was no longer "stolen" but was in the custody of the owner who had received it through his agent.
Thus, questions of statutory construction are raised. Did our legislature in enacting La.R.S. 14:69 intend to incorporate either of the additional elements of the crime of receiving stolen property that apparently are essential to conviction in most other states? Although we frankly doubt that the lawmakers sought to punish a person who knowingly receives stolen property with an intent to return it to its owner, La.R.S. 14:69 and all preceding legislation seem to be silent on this point. Because the answer to the second question is clearer, we set to one side, without deciding, whether the Louisiana receiving stolen property crime can be committed without an intent to deprive the owner of his property.
The very name of the crime, "receiving stolen things," invokes an express requirement that the things must be "stolen" at the time they are received in order for the conduct to be illegal. Although a contrary argument could be made based on the tenses of some of the verbs in the crime definition, it must be rejected if the law's provisions are "given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La.R.S. 14:3. If the law were interpreted so as to prevent the stolen property from losing its stolen character upon recovery by the owner, an absurd result inconsistent with the legislation's purpose would be achieved. Policemen, spouses, relatives, friends and trusted employees acting in good faith for the owner, as well as the owner himself, would be guilty of the crime upon receipt of the property with knowledge that it had once been stolen, if the stolen character of the property were to continue even after recovery by the owner or someone acting for him.
For these reasons we conclude that the legislature intended that proof of the commission of receiving stolen things, La.R.S. 14:69, requires proof that the property in question be "stolen" at the moment the defendant receives it. Since the stipulated facts in this case conclusively establish that at the time of the alleged offense the watch, although previously stolen, had lost its stolen character through recovery by the owner's agent, the defendant cannot be held guilty for receiving the watch.
Consequently, since there was no evidence to support a finding that defendant violated La.R.S. 14:69 in receiving either the pendant or the watch, the trial court's refusal to grant defendant's motion was error and defendant's conviction and sentence must be reversed.
Under circumstances in which a defendant's conviction has been overturned due to a total lack of evidence as to an essential element of the crime as distinguished from reversal for a trial error, the Double Jeopardy Clause prohibits a second trial and requires the direction of a judgment of acquittal. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); State v. Brown, 366 So.2d 550 (La. 1979). Moreover, the fact that defendant has sought a new trial as his sole remedy does not mean that defendant has waived his right to a judgment of acquittal. Burks v. United States, supra.
Accordingly, for the reasons assigned, defendant's conviction and sentence are reversed, and a judgment of acquittal is entered in his favor.
REVERSED: JUDGMENT OF ACQUITTAL RENDERED.
NOTES
[*] Chief Judge L. Julian Samuel participated in this decision as Associate Justice Ad Hoc sitting in the place of Chief Justice Sanders, retired.