835 P.2d 488

**STATE of Arizona, Appellee,**

v.

**Christopher Andrew DiGIULIO, Appellant.**

**No. 1 CA–CR 90–0323.**

Court of Appeals of Arizona, Division 1, Department E.

June 16, 1992.

Reconsideration Denied Aug. 12, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Randall M. Howe, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by James M. Likos, Deputy Public Defender, Phoenix, for appellant.

## OPINION

VOSS, Presiding Judge.

Appellant, Christopher Andrew DiGiulio ("defendant") was convicted following a jury trial of trafficking in stolen property with one prior felony conviction, a class 2 felony. The facts are viewed in the light most favorable to sustaining the verdict. *State v. Zmich,* 160 Ariz. 108, 109, 770 P.2d 776, 777 (1989).

### FACTS AND PROCEDURAL HISTORY

On July 21, 1988, Thomas Martin discovered that the music studio/workshop at his Phoenix home had been burglarized and that his guitar, two drum machines and a stereo receiver had been stolen. Martin suspected that the thief was defendant, who had previously been inside his home to repair electronic equipment. Two days before the burglary, defendant had returned to Martin's house soliciting further repair work and told Martin that he was badly in need of money. Martin allowed defendant to take away a microwave oven that needed repair. Martin gave defendant $23 for the repair, but defendant contacted him the

following day and asked for more money. Martin refused that request.

On the day of the burglary, Martin drove to defendant's home and accused him of stealing his property. Defendant denied the accusation. Defendant also claimed that he had returned the microwave oven to Martin's porch early that morning, before the burglary. Since Martin had not found the oven on his porch, defendant speculated that the burglar must have stolen it as well. Martin examined the soles of defendant's athletic shoes and testified that they appeared to match a footprint he found outside his workshop after the burglary.

Because he was desperate to recover his guitar, Martin asked defendant if he would help him locate the instrument. Martin stated he would pay to get it back. Defendant expressed interest in the proposal, and asked Martin for a description of the guitar so that he could make inquiries. The following morning, July 22, defendant contacted Martin and said he had located the guitar and could recover it if he received $350 from Martin. He asked Martin to write him a note authorizing him to do so. The note stated in part: "I have empowered Chris DiGiulio to recover it [the guitar] for me. In consideration of his services he is not to be held responsible or liable to prosecution in the theft." Martin arranged to transfer the money to defendant later in the morning. Martin then contacted police, who arranged to keep defendant under surveillance during the transaction.

Martin delivered the $350 to defendant at a central Phoenix apartment. Defendant asked if police were involved and Martin assured him they were not. The undercover officers observed defendant leave the apartment and go to a nearby electronics business where he recovered Martin's guitar. When he returned to the apartment, he was arrested by police, who found him in possession of $290 of the cash Martin

had given him. The owner of the electronics store, Randell Brunt, testified that defendant had come to his store and sold him the guitar for $65 and two drum machines for $50. The next day he returned, and repurchased the guitar for $60 or $65. Defendant admitted selling Martin's property to Brunt on the day of the burglary, but claimed he had agreed to sell it, unaware it was stolen, for a casual acquaintance he met in a neighborhood bar.

Defendant was charged by information with one count of first-degree trafficking and one count of theft, a class 3 felony. At the request of defense counsel, the jury was instructed that the charges were based only on defendant's possession of the guitar on July 22 and on his transfer of the instrument to Martin, and not on the previous transfers to and from Brunt. The jury convicted defendant of trafficking, but acquitted him of theft.

Defendant absconded before the verdicts were read. After he was apprehended in Ohio in 1989 and returned to Arizona, he admitted the state's allegation of a prior felony conviction. Defendant was sentenced to an enhanced presumptive prison term of 10.5 years. He filed a timely notice of appeal, and raises three issues:

1. There is insufficient evidence to support his conviction of trafficking in the first degree;

2. The jury was erroneously instructed on that offense; and

3. The court erred in advising defendant regarding parole eligibility in connection with his admission of prior felony convictions.

## DISCUSSION

*a. Sufficiency of the evidence.*

■ Defendant contends that the evidence at trial was insufficient to support his conviction for trafficking. *See* Ariz. R.Crim.P. 20 [1] Defendant's motions for

---

1. The rule provides in pertinent part:
   **a. Before Verdict.** On motion of a defendant or on its own initiative, the court shall enter a judgment of acquittal of one or more offenses charged in an indictment, informa-

   tion or complaint after the evidence on either side is closed, if there is no substantial evidence to warrant a conviction. The court's decision on a defendant's motion shall not be

judgment of acquittal were denied at the close of the state's case and at the close of the evidence. A judgment of acquittal is appropriate where there is "no substantial evidence to warrant a conviction." *Id.; State v. Mathers,* 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990). Substantial evidence is more than a mere scintilla and is such proof that "reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *Id.* In evaluating the evidence, we must view it in the light most favorable to sustaining the verdict. *State v. Arredondo,* 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987). If substantial evidence supports the verdict, it must be upheld. *State v. Mosley,* 119 Ariz. 393, 402, 581 P.2d 238, 247 (1978).

Ariz.Rev.Stat.Ann. ("A.R.S.") § 13–2307(B) defines trafficking in the first degree:

A person who knowingly initiates, organizes, plans, finances, directs, manages or supervises the theft and trafficking in the property of another that has been stolen is guilty of trafficking in stolen property in the first degree.

"Stolen property" and "traffic" are defined in A.R.S. § 13–2301(B):

2. "Stolen property" means property that has been the subject of any unlawful taking.

3. "Traffic" means to sell, transfer, distribute, dispense or otherwise dispose of stolen property to another person, or to buy, receive, possess or obtain control of stolen property, with intent to sell, transfer, distribute, dispense or otherwise dispose of to another person.

"Property of another" is not defined within Chapter 23 nor by the definitions applicable to the criminal code generally. *See* A.R.S. § 13–105. However, the term is defined within A.R.S. tit. 13, ch. 18, concerning theft offenses. A.R.S. § 13–1801(A)(12) states in pertinent part:

"Property of another" means property which any person other than the defendant has an interest which the defendant is not privileged to infringe, . . . .

reserved, but shall be made with all possible

Although the definitions of § 13–1801 are explicitly applicable only to chapter 18 offenses, reference to the statute is appropriate since conviction of trafficking in the first degree requires proof that defendant transferred stolen property. Also relevant is the general definition of theft. A.R.S. § 13–1802(A) provides in pertinent part:

A person commits theft if, without lawful authority, such person knowingly:

\* \* \* \* \* \*

5. Controls property of another knowing or having reason to know that the property was stolen . . .

Finally, A.R.S. § 13–1801(A)(2) states that "control" means "to act so as to exclude others from using their property except on the defendant's own terms."

Defendant contends that there was insufficient evidence to support the trafficking conviction because, at the time of the transfer of the guitar to Martin, the property was no longer stolen. He argues that his arrangement with Martin constituted an agency relationship which conferred on him "lawful authority" or "privilege" to control the guitar for purposes of returning it to the owner.

■ Defendant is correct in asserting that his conviction could not stand if the guitar were not stolen. *See State v. Vitale,* 23 Ariz.App. 37, 530 P.2d 394 (1975). At worst, he could be convicted of attempted trafficking. *State v. Galan,* 134 Ariz. 590, 658 P.2d 243 (App.1982). Recovery of property by authorized persons, such as the police, strips it of its stolen character, and precludes conviction based upon its subsequent receipt or possession. *Vitale,* 23 Ariz.App. at 43, 530 P.2d at 390; *United States v. Cawley,* 255 F.2d 338, 340 (3d Cir.1958).

*State v. Nguyen,* 367 So.2d 342 (La. 1979), illustrates this principle in a factual setting strikingly similar to that presented here. The victim, a shop owner, lost several items of jewelry in a burglary of his business. Nguyen brought one of the items, a pendant, to the victim to have a

speed.

chain attached. The victim informed Nguyen that the pendant belonged to him. Nguyen explained that he had obtained the item from his landlady, and agreed to try and locate other stolen items for the victim. He returned one item, a watch, to the shop owner and was prosecuted for receiving stolen property. In reversing Nguyen's conviction, the Louisiana Supreme Court echoed the argument made in this case:

> [T]he parties have stipulated facts which clearly show that the defendant acted as the agent of Mr. Van Tran, the owner, and not for himself, in receiving or procuring the watch. Accordingly, at the time the defendant took the watch into his possession it was no longer "stolen" but was in the custody of the owner who had received it through his agent.

367 So.2d at 345.

■■ Despite the similarities of this case to *Nguyen,* we reject defendant's argument. While defendant was "authorized," in the broad sense, to recover the guitar for Martin, he lacked "lawful" authority to do so. This distinction, not previously drawn by Arizona cases, is necessary in light of defendant's claim that he acted as Martin's "agent." An agent is duty bound not to acquire a private interest antagonistic to that of his employer. *Mallamo v. Hartman,* 70 Ariz. 294, 219 P.2d 1039 (1950); *Edwards v. Hauff,* 140 Ariz. 373, 375, 682 P.2d 1, 3 (App.1984); *Restatement (Second) of Agency* § 387 (1958) ("Restatement").[2] Thus, it is fundamental that an agent must disclose any interests that are adverse to those of his principal. *Christman v. Seymour,* 145 Ariz. 200, 203, 700 P.2d 898, 901 (App.1985); *Restatement,* § 389.[3] Violating the duty of loyal-

> **2.** General Principle
>
> Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency.
>
> **3.** Acting as Adverse Party without Principal's Consent
>
> Unless otherwise agreed, an agent is subject to a duty not to deal with his principal as an adverse party in a transaction connected with his agency without the principal's knowledge. Comment (a) to this section states in part:

ty, or failing to disclose adverse interests, voids the agency relationship. *Restatement* § 112, states:

> Disloyalty of Agent
>
> Unless otherwise agreed, the authority of the agent terminates if, without knowledge of the principal, he acquires adverse interests or if he is otherwise guilty of a serious breach of loyalty to the principal.

*See also Id.,* § 399.

The record shows that after defendant denied burglarizing Martin's home, Martin sought his cooperation in recovering his guitar. Defendant expressed interest in assisting Martin and asked for a description of the instrument. Defendant never revealed that he had come into possession of the guitar and, in fact, had sold it to Brunt the same day. The next morning, defendant contacted Martin again. According to Martin,

> He said he had located it, located the guitar, and that he—he said he located it just in time because it was on its way to a collector, but he had spoken to whoever had it and they wanted five hundred dollars for it, but he had talked them into giving it back for two hundred fifty dollars,[4] and that if I could give him that money, he could get my guitar back.

At this point, defendant asked for and received from Martin a document that empowered him to recover the guitar and absolved him of responsibility for its theft. Defendant admitted that he never revealed the guitar's whereabouts or the fact that he could recover it for $65. He stated that he felt entitled to a $285 profit on the transaction as "my fee as agent for him."

> The agent's failure to reveal that he has an interest in the transaction is sometimes spoken of as fraudulent. If the agent intends to take advantage of the principal, the epithet, with its implication of immorality, is justified. But irrespective of the words used to characterize the agent's conduct, such a transaction can be rescinded by the principal although the agent acts in good faith and without consciousness of wrong doing.

**4.** Martin later corrected his testimony, stating that he agreed to pay $350 for the recovery of the guitar.

The evidence was uncontradicted that defendant dealt for himself and made no disclosure of his interest to his "principal," Martin. As a result, there was no valid "agency" relationship protecting defendant's reacquisition of the guitar. This factor distinguishes this case from *Nguyen*, in which there was no suggestion that the defendant misled the victim in acquiring authority to recover the stolen watch. The evidence was more than sufficient to permit the jury to conclude that the guitar was possessed without "lawful authority" or "privilege" and therefore was stolen property when defendant gave it back to Martin.

### b. *Jury instruction.*

The court's jury instruction on trafficking in the first degree omitted an essential element: that defendant must have participated in the theft, as well as the trafficking, of stolen property.[5] Although no objection was made to this wording at trial, the state and defendant agree that the error is fundamental, since eliminating an element of the offense from a jury instruction goes to the foundation of the case.

The state, however, contends that a remand for retrial is unnecessary because the instruction in question adequately informed the jury of the elements of trafficking in the second degree, a lesser-included offense. Because the jury's guilty verdict reflects a determination that all the elements stated in the instruction were proven beyond a reasonable doubt, the state asserts that the proper remedy is to remand for resentencing on the lesser charge.

Under A.R.S. § 13–4036, appellate courts may "affirm or modify the judgment appealed from, and may grant a new trial or render any judgment or make any order which is consistent with the [sic] justice and the rights of the state and the defendant." Pursuant to this authority, courts have modified judgments to reflect conviction of a lesser-included offense when there was insufficient proof on an element required for the greater offense. *See State v. Garza–Rodriguez,* 164 Ariz. 107, 791 P.2d 633 (1990) (convictions of armed robbery modified to robbery); *State v. Dixon,* 107 Ariz. 415, 489 P.2d 225 (1971) (conviction of voluntary manslaughter modified to involuntary manslaughter); *State v. Hunter,* 102 Ariz. 472, 433 P.2d 22 (1967) (conviction of first degree burglary modified to second degree burglary); *State v. Rowland,* 12 Ariz.App. 437, 471 P.2d 322 (1970) (same).

We have been unable to locate a case in which a modification of the judgment of conviction to a lesser offense has been ordered to rectify a jury instruction that inadequately described the distinguishing element of the greater offense. *But see State v. Rendon,* 161 Ariz. 102, 105, 776 P.2d 353, 356 (1989) (court noted that remand for resentencing on lesser-included offense of first degree burglary may be a proper remedy for conviction tainted by flawed instruction). Nevertheless, we believe that remedy is appropriate here. Because it is impossible to commit the offense of trafficking in the first degree without satisfying all the elements of trafficking in the second degree, the latter crime is a lesser-included offense of the former. *State v. Noriega,* 142 Ariz. 474, 481, 690 P.2d 775, 782 (1984), *overruled on other grnds* in *State v. Burge,* 167 Ariz. 25, 804 P.2d 754 (1990). Even though second degree trafficking requires the state to show that defendant acted recklessly, that culpable mental state was established by proof of a higher mental state, that he acted knowingly. *See* A.R.S. § 13–202(C). The state is correct in asserting that the instruction adequately informed the jury of the elements of the lesser offense and that the verdict may reflect a conviction of that offense.

Modifying the judgment works no injustice on the defendant: His defense at trial rested on the contention, shown to be erroneous, that his transfer of the guitar to

---

5. The court's instruction stated in pertinent part: "The crime of Trafficking in Stolen Property requires proof beyond a reasonable doubt that the defendant knowingly initiated, organized, planned, financed, directed, managed or supervised the trafficking in the property of another that had been stolen." *Compare* A.R.S. § 13–2307(B).

Martin occurred when the instrument was no longer stolen. Given the jury's verdict, there is no reason to believe it would have accepted this theory as a defense to second degree trafficking if it had been explicitly instructed on that charge. Modification of the judgment actually works in defendant's favor since, if retrial were ordered, he would be subjected to conviction of first degree trafficking.

■ Defendant contends that his conviction for trafficking must be vacated because the jury acquitted him of theft. There is no merit to this argument. While the jury's verdicts were inconsistent, that fact does not entitle defendant to relief. There is no constitutional requirement that verdicts be consistent. *United States v. Powell,* 469 U.S. 57, 65, 105 S.Ct. 471, 477, 83 L.Ed.2d 461 (1984); *Harris v. Rivera,* 454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981). Arizona recognizes this rule as well. *See, e.g., State v. Estrada,* 27 Ariz. App. 38, 550 P.2d 1080 (1976) (acquittal of defendant on charges of possession and transportation of heroin did not require reversal of conviction of conspiracy, even though only overt acts alleged were subject of acquittals).

c. *Admission of prior felony convictions.*

■ A defendant convicted of a class 2 or 3 felony with a prior felony conviction is ineligible for parole until two-thirds of his sentence has been served. A.R.S. § 13-604(B). Because this is a special condition of sentencing, it must be explained to defendant at the time of his change of plea. Ariz.R.Crim.P. 17.2; *State v. James,* 126 Ariz. 353, 354, 615 P.2d 650, 651 (App. 1980). The protections of Rule 17.2 apply to a defendant who is making an admission of prior felony convictions following a trial on the substantive offense. Ariz.R.Crim.P. 17.6. At the time he admitted his prior convictions, defendant was not explicitly advised of his earliest date of parole eligibility. Rather, the court appeared to advise him only of the rate at which he could accrue earned release credits.

This error does not require vacation of the admission of prior convictions, however. If defendant contends that he was unaware from any source of his earliest date of parole eligibility, he may raise that allegation by a petition for post-conviction relief. *See* Ariz.R.Crim.P. 32; *State v. Crowder,* 155 Ariz. 477, 747 P.2d 1176 (1987); *cf. James,* 126 Ariz. at 354, 615 P.2d at 651 (remedy for failure to advise defendant regarding parole eligibility is remand for evidentiary hearing to determine whether defendant was aware of special condition).

The record shows that petitioner has already filed a Rule 32 petition which does not raise this issue. Because this opinion incrementally extends *Crowder* to claims based on the court's failure to inform defendant of a special parole condition, such a claim, if raised by this petitioner in a subsequent petition, shall not be subject to preclusion on the ground that it was not previously asserted. *See* Ariz.R.Crim.P. 32.2, 32.10.

## CONCLUSION

Pursuant to A.R.S. § 13-4035, we have reviewed the entire record for additional fundamental error and have found none. We modify the judgment to reflect defendant's conviction for trafficking in the second degree and remand for resentencing. The trial court's finding of a prior felony conviction is affirmed, subject to further proceedings which may be initiated by defendant under Rule 32.

CLABORNE and EUBANK, JJ., concur.