FAULKNER, J.
| tDefendant, Ricky C. McGowan, assigns as error the trial court’s admission of other crimes or bad acts evidence under La. C.E. art. 404(B). Defendant also argues his enhanced sentence is constitutionally excessive. For the reasons that follow, we find no merit to defendant’s arguments and accordingly affirm his convictions and sentences.

PROCEDURAL HISTORY

On October 30, 2014, the Jefferson Parish District Attorney filed a bill of information charging defendant with illegal possession of stolen things having a value of over $1,500.00 in violation of La. R.S. 14:69. Defendant was arraigned the same day and pled not guilty. Subsequently, on April 22, 2015, the Jefferson Parish District Attorney filed a superseding bill of information, additionally charging defendant with forgery, “to wit: a sales invoice” in violation of La. R.S. 14:72. Defendant was arraigned on the superseding bill of information on April 23, 2015, and pled not guilty. On September 9, 2015, a number of defendant’s pro se motions were heard and denied. On November 16, 2015, defendant’s motions to suppress photo identification and statements were heard and denied. The State filed a Notice of Intent to Introduce Evidence of Other Bad Acts pursuant to La. C.E. art. 404(B) on May 12, 2015, that was granted after a hearing on November 16, 2015.
After the hearing on the State’s 404(B) motion, trial commenced before a six-person jury on November 16, 2015, and defendant was found guilty as charged on both counts. Thereafter, on November 20, 2015, the State filed a multiple offender bill of information on count one, alleging defendant to be a third felony offender. On December 7, 2015, defendant filed a motion for a new trial that was heard and denied on December 9, 2015. After defense counsel waived delays, the trial court sentenced defendant to ten years at hard labor on each count to run | ^concurrently with each other. Defendant filed an Objection to Multiple Offender Bill of Information and Incorporated Motion to Quash on December 10, 2015, and the State filed an opposition to the motion on January 5, 2016.
On January 14, 2016, a hearing on the multiple bill was held, the motion to quash was denied, and after finding defendant to be a third felony offender, the trial court vacated its previously imposed sentence on count one and resentenced defendant, pursuant to La. R.S. 15:529.1, to fifteen years at hard labor without the benefit of probation or suspension of sentence. The next day, defendant filed a motion to reconsider *1159 his enhanced sentence, which was denied on January 20, 2016. Also on January 15, 2016, defendant filed a timely motion for appeal, which was granted on January 20, 2016. The instant appeal follows.

FACTS

Samuel Wester, a project superintendent with CM Combs Construction, testified that in September 2014, he was working on a project located at 7901 Crowder Boulevard in New Orleans. As part of his job duties, he ordered materials and equipment for the project, which included a skid steer[1] that he rented from Sunbelt Rental (Sunbelt). On September 8, 2014, Wester walked onto the job site and realized the skid steer was missing, so he called the New Orleans Police Department and reported it stolen.
Mike Messina, the profit center manager at Sunbelt, explained that Sunbelt rents construction equipment to commercial, industrial, and residential contractors, as well as homeowners and sometimes sells used equipment. He confirmed that Sunbelt rented a skid steer, more particularly, a Bobcat T300 with the serial number A5GU35939, to CM Combs Construction beginning in May 2014 for a [^project on Crowder Boulevard in New Orleans. In September 2014, he was notified by CM Construction that the equipment was stolen from the job site.
Keith Kiraly, the owner of Rock and Roll Auto Sales, a used car facility, testified that he was in the market to buy,a skid steer in September 2014. From one of his employees, Mr. Kiraly learned that defendant, who Mr. Kiraly knew as “Ricky D.,” had come' into his dealership looking to sell one. Later, when he asked about it, •defendant had already sold it, but Mr. Kiraly learned that he had “another one that’s coming off of a job.” Mr. Kiraly went to view the piece of equipment, a Bobcat, in Marrero. Mr. Kiraly testified that defendant assured him that “it was not hot.” Defendant provided him a receipt with a “raised seal” for the Bobcat purporting that he had purchased it from Sunbelt.[2] At that point, Mr. Kiraly wanted to take the Bobcat back to his dealership, where he could test drive it to make sure it was in working order, so he went to retrieve his trailer in Westwego.
When he returned with his trailer, he realized the Bobcat would not fit on it, but defendant told him he could bring it to his dealership for him. Mr. Kiraly left to return his trailer with that understanding. However, before going back to his dealership, on the way back from returning his trailer, Mr. Kiraly stopped in at Sunbelt[3] to “see if [he] could find out the year or so [he] could get the books for the machine.” Mr. Kiraly explained that he went to Sunbelt with the receipt he obtained from defendant, detailing a prior sale, as well as a .copy of defendant’s identification card, with the intent of trying to obtain a manual for the Bobcat in case future repairs needed to be done. At first, he was assured that the receipt was “legit” and that defendant had come in recently to get a copy of the purchase receipt. However, “the more they looked into it” Sunbelt *1160 realized that the receipt was for a different piece of machinery, not the Bobcat T300 that Mr. Kiraly sought |4to buy from defendant. Mr. Messina explained that he knew the receipt provided by defendant to Mr,-Kiraly was not for the same machine because the serial number and the unit number were different.. Further, the machine in .question was never sold, and the receipt had a date of sale as August 23, 2018. Mr. Messina further testified regarding the discrepancies between the receipt defendant gave to Mr. Kiraly with the raised seal purporting to be the receipt for the Bobcat T300 and the original obtained from Sunbelt. The dates on the receipts were different; the one defendant provided to Mr. Kiraly was dated August 23, 2013, while the legitimate receipt was dated August 23, 2005. He stated that Sunbelt did not have an invoice with the date August 23, 2013. Additionally, pointing out the differences between the two, he stated that the notary stamp only appeared on the one defendant gave to Mr. Kiraly, He explained that Sunbelt did “not have a notary on site” and that there was “no reason’ for [Sunbelt] to' notarize any of [the] documents” that they provide. Further, the machine referred to in both receipts was sold “as is” for scrap for a value of $8,000.00 whereas the machine actually being sold had an estimated value of $40,000.00.
Mr. Messina then explained to Mr. Kiraly that one of their Bobcat T300s was stolen “approximately two to three weeks ago” in New Orleans, and asked if he could come to view the Bobcat Mr. Kiraly was buying from defendant. Mr. Kiraly explained, that defendant was bringing the Bobcat to his dealership but that they could “come on over and ... look at it.” Mr. Kiraly left Sunbelt and returned to his dealership, where defendant unloaded the Bobcat from his trailer.[4] Then, defendant stated he was going to i-eturn his trailer and return soon.
In the meantime, Mr. Messina came to look at the Bobcat. He testified that the “serial number was missing, but it did have a Sunbelt Rental sticker on the front ... it was missing some of the rest of the stickers and the sides had been hpainted ... a brown type of color.” It was then that Mr. Messina “realized it was [his] machine” and he called the sheriffs office.
Detective Chad Dear, with the Jefferson Parish Sheriffs Office Auto Theft Unit, testified that when he was first notified about this potential theft, he responded to Rock and Roll Auto Sales where he observed a Bobcat, and he noticed that the VIN plate was removed. He later located the secondary VIN and was able to confirm that it was the same Bobcat that was reported stolen from Sunbelt.

ASSIGNMENT OF ERROR NUMBER ONE

The Court incorrectly ruled that the State would be allowed to present other crimes evidence.

DISCUSSION

In this assignment of error, defendant argues the trial court erred by allowing evidence of his prior crime into evidence. He contends that his conviction for altering/removing a motor vehicle’s Vehicle Identification Number (VIN), which occurred fifteen years earlier, was not relevant to any real and genuine contested issue at trial. Further, he avers that the probative value of the prior conviction was greatly outweighed by its prejudicial value.
The State argues that the issue was not preserved for appeal as defense counsel *1161 failed to properly object to the admission of the prior crime evidence and ■ to the State’s introduction, of defendant’s prior conviction packet at trial. The State also avers that defendant’s argument that the prior conviction was too remote in time to the instant offense is without merit.
After hearing arguments, the trial court granted the State’s 404(B) motion. The record reveals that defense counsel did not object to the trial court’s pre-trial ruling that the prior crime evidence was admissible. At trial, the State introduced defendant’s 2000 conviction for altering or removing motor YIN numbers to show | fithat defendant knew or had good reason to believe that the Bobcat was stolen because its VIN was removed. See La. R.S. 14:69(A).[5] Defense counsel responded, “No, sir” when asked by the court if he had any objection to its admittance.
In order to preserve the right to seek appellate review of an alleged trial court error, the party claiming the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. La.C.Cr.P. art. 841(A); State v. Berroa-Reyes, 12-581 (La.App. 5 Cir. 1/30/13), 109 So.3d 487, 498; State v. Richoux, 11-1112 (La.App. 5 Cir. 9/11/12), 101 So.3d 483, 490-491, writ denied, 12-2215 (La.4/1/13), 110 So.3d 139; State v. Alvarez, 10-925 (La.App. 5 Cir. 6/29/11), 71 So.3d 1079, 1085. Defendant is limited on appeal to matters to which an objection was made, but also to the grounds for his objection articulated at trial. State v. Jackson, 450 So.2d 621 (La.1984); State v. Baker, 582 So.2d 1320 (La.App. 4 Cir.1991), writ denied, 590 So.2d 1197 (La.1992), cert. denied, 506 U.S. 818, 113 S.Ct. 62, 121 L.Ed.2d 30 (1992).
In State v. Patin, 13-618, p. 14 (La.App. 5 Cir. 9/24/14), 150 So.3d 435, 443, writ denied, 14-2227 (La.4/22/16), 191 So.3d 1043, the defendant objected to the trial court’s La. C.E. art. 404(B) pre-trial ruling allowing the State to introduce evidence from the New Orleans case, but at trial the defendant consented to the evidence seized in New Orleans which was admitted, stating, “No objection, your hon- or,” after the trial judge asked if he objected. This Court held that the issue had |7been waived, had not been preserved for appeal, and should not be reviewed or considered by this Court. Here, defendant failed to object at trial after the State sought to introduce the prior conviction packet. Therefore, we find that he failed to properly preserve this issue for appeal.
Nevertheless, an improper reference to other crimes evidence is subject to the harmless error rule. State v. Battie, 98-1296 (La.App. 5 Cir. 5/19/99), 735 So.2d 844, 852, writ denied, 99-1785 (La.11/24/99), 750 So.2d 980 (citing State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 101-02). The test for determining *1162 harmless error is whether the verdict actually rendered in the case was surely unattributable to the error. Id.
Even if the evidence was improperly admitted, there is ample evidence apart from the presentation of the other crime to support defendant’s conviction of illegal possession of stolen things, and thus the admission of the testimony, even if improper, was harmless error. This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER TWO

Defendant received an excessive sentence.

DISCUSSION

In this assignment of error, defendant argues that his sentence, totaling fifteen years, is unnecessarily harsh and excessive. He avers that his fifteen-year sentence is excessive, particularly when no one was harmed. He contends that his incarceration serves no acceptable goal of punishment and is a waste of the State’s limited resources. He argues that his sentence should be vacated and remanded for reconsideration. The State responds that defendant’s sentence was within the statutory guidelines and, therefore, not excessive.
The day after his enhanced sentencing, defendant filed a motion to reconsider sentence, arguing that the sentence imposed was unconstitutionally excessive because the offenses were non-violent and “all property was returned to |sits rightful owner in good condition.” He further argued that his offenses were “related to his addiction to narcotics,” and he needed rehabilitation and drug treatment. Additionally, he contends his fifteen-year sentence as a multiple offender was “excessive and meaningless” and an “infliction of pain and suffering” and requests that this Court “vacate its original sentence and resen-tence him to a non-excessive sentence.” As such, we will address whether defendant’s enhanced sentence is excessive.
Where the defendant’s motion to reconsider sentence alleges mere exces-siveness of sentence, the reviewing court is limited to only a review of whether the sentence is constitutionally excessive. La. C.Cr.P. art. 881.3; State v. Mims, 619 So.2d 1059 (La.1993). Accordingly, due to defendant’s bare claim of excessiveness of sentence in his motion, defendant’s sentence is limited to a review for constitutional excessiveness.
The Eighth Amendment to the U.S. Constitution and Article I, § 20 of the Louisiana Constitution'prohibit the imposition of excessive punishment. State v. Nguyen, 06-969, p. 5 (La.App. 5 Cir. 4/24/07), 958 So.2d 61, 64, writ denied, 07-1161 (La.12/7/07), 969 So.2d 628. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. Nguyen, 06-969 at 5-6, 958 So.2d at 64. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the sense of justice. State v. Taylor, 06-839, p. 3 (La.App. 5 Cir. 3/13/07), 956 So.2d 25, 27, writ denied, 06-0859 (La.6/15/07), 958 So.2d 1179 (citing State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Pearson, 07-332, 07-333, 07-539, p. 15 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 655-56).
| ¡According to La.C.Cr.P. art. 881.4(D), the appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. In reviewing a sentence for excessiveness, the *1163 reviewing court shall consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court’s sense of justice, while recognizing the trial court’s wide discretion. Nguyen, 06-969 at 6, 958 So.2d at 64. In reviewing a trial court’s sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Allen, 03-1205 (La.App. 5 Cir. 2/23/04), 868 So.2d 877, 880. However, there is no requirement that specific matters be given any particular weight at sentencing. State v. Tracy, 02-0227 (La.App. 5 Cir. 10/29/02), 831 So.2d 503, 516, writ denied, 02-2900 (La.4/4/03), 840 So.2d 1213.
Defendant was convicted of illegal possession of stolen things having a value of over $1,500 in violation of La. R.S. 14:69 and forgery in violation of La. R.S. 14:72. Under the article, the sentencing range for illegal possession of stolen things having a value of over $1,500 is imprisonment with or without hard labor for not more than ten years, or a fíne not more than three thousand dollars, or both. See La. R.S. 14:69(B)(1). Upon original sentencing, defendant was sentenced to ten years imprisonment on count one, and the trial judge noted that he was sentencing defendant “in accordance with Code of Criminal Procedure Article 894.1.”
Defendant was found to be a third felony offender on count one. La. 15:529.1 provides that if the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life, then the person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence and not more than twice the |1ftlongest possible sentence. See La. R.S. 15:529.1(3)(a). Therefore, defendant was facing an enhanced sentencing range of 6.6 years to 20 years imprisonment.
As previously stated, on count two, defendant was sentenced to ten years imprisonment at hard labor, and on count one, his enhanced sentence was fifteen years at hard labor without benefit of probation or suspension of sentence. The trial judge further ordered that these sentences run concurrently.
The multiple offender law expresses clear legislative intent; repeat offenders are to receive serious sentences. State v. Carter, 96-358 (La.App. 5 Cir. 11/26/96), 685 So.2d 346, 353. The review of sentences under La. Const, art. 1, § 20 does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is most appropriate in a given case. State v. Williams, 07-1111, p. 1 (La.12/7/07), 969 So.2d 1251, 1252 (per curiam). Further, when an appellate court is reviewing a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Walker, 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462 (per curiam).
In the instant case, we find defendant’s enhanced sentence is not constitutionally excessive. The record reflects that defendant was found to be a third felony offender with predicate convictions for possession of cocaine and possession of marijuana, third offense. Considering defendant’s criminal history, the fact that defendant’s enhanced sentence is five years below the maximum sentence, and that his sentences could have been imposed consecutively, the trial judge did not abuse his discretion when imposing *1164 the enhanced sentence. This assignment of error lacks merit.

\uERROB PATENT REVIEW

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We find no errors that require corrective action.
Accordingly, for the reasons set forth herein, we affirm defendant’s' convictions and sentences.

CONVICTIONS AND SENTENCES AFFIRMED

. A skid steer, or skid loader, is commonly referred to as a Bobcat. One witness explained that "Bobcat is a generic name, like the word Kleenex's .,. people say I'm going for a Kleenex and it might be Puffs ... the same with Bobcat.”

. Sunbelt is also referred to as "Nations Rent” throughout the transcripts. Mr. Messi-na explained that Sunbelt "bought out” Nations Rent “sometime ago and Nations Rent no longer exists."

.Mr. Messina explained that Sunbelt is "about a block or two away” from Mr. Kiraly’s dealership.

. Charles Adams, an employee at Rock and Roll Auto Sales, identified a picture of defendant as "the guy that dropped off the T300 Bobcat.”

. La. R.S. 14:69(A) provides: "Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which’has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.” With regard to the element of guilty knowledge, the Louisiana Supreme Court, in State v. Chester, 97-1001 (La.12/19/97), 707 So.2d 973, 974, stated as follows:
In Louisiana, the "mere possession: of stolen property does not create a presumption that the person in possession of the property received it with knowledge that it was stolen by someone else.” State v. Ennis, 414 So.2d 661, 662 (La.1982); State v. Nguyen, 367 So.2d 342, 344 (La.1979); State v. Walker, 350 So.2d 176, 178 (La.1977). The state must therefore prove the defendant's guilty knowledge as it must every other essential element of the offense. Ennis, 414 So.2d at 662.