410 So.2d 1099 (1982)
STATE of Louisiana
v.
Gary JUENGAIN.
No. 81-KA-1951.
Supreme Court of Louisiana.
March 1, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Harry Hardin, Asst. Dist. Attys., for plaintiff-appellee.
Robert T. Garrity, Jr., New Orleans, and Joseph L. Montgomery, Metairie, of Indigent Defender Bd., for defendant-appellant.
SHORTESS, Justice Ad Hoc.[*]
Gary Juengain (defendant) was charged by bill of information with the crime of receiving stolen things, a violation of La. R.S. 14:69. On July 22-23, 1980, he was tried by a six-person jury, found guilty as charged, and then sentenced to serve six years at hard labor. On appeal, defendant relies upon two assignments of error.
Thomas Cordes, an undercover agent for the New Orleans Police Department testified that he was working for the Metropolitan Crime Strike Force at 3025 Ridgelake in Metairie on May 12, 1979, when James Carney telephoned and offered to sell him some $1600 worth of travelers checks for $500.00; that Carney and defendant met him at 3025 Ridgelake around 3:10 p.m.; that defendant produced $910.00 in travelers checks and Carney had $700.00 worth; that he offered a total of $300.00 for all the checks but *1100 defendant held out for $500.00; that at one time during the negotiations, defendant turned around as though he was going to leave but the deal was finally consummated for $500.00 which he gave to defendant; that after the deal was completed he turned the checks over to Richard J. Seigel, another agent, to preserve for evidence; that the entire transaction was videotaped by Nelson Juneau, a deputy sheriff for Jefferson Parish; and that these tapes were preserved and used in evidence.
Barron Daniel, a special agent with the Inspector's Office of the American Express Company, was called as a State witness. He testified that he had been assigned to investigate a report of lost or stolen travelers checks belonging to Susan Bayer Libowitz, which his company had to replace; that in connection with his investigation, he obtained certain business records of American Express Company that pertained to reports of stolen or lost travelers checks; that the procedure for reporting lost or stolen travelers checks requires a customer to telephone a toll-free number in New York City; that a report is made at that time which contains the customer's name, address and the numbers on the lost, stolen or misplaced checks; that the report also includes information as to where the checks were purchased, when they were discovered lost, and other personal information about the customer; that this information is then fed into a computer system, hopefully to prevent further negotiation of the checks. Notwithstanding timely objection from the defendant that these documents contained hearsay and were not the best evidence, Daniel was permitted to testify that the documents he received indicated that the checks had been stolen. Then after interrogation by the trial judge which established that Daniel was not testifying from original reports and that the copies he had were not made in his department under his direction and control, he sustained defendant's hearsay objection. Agent Daniel was then asked by the Assistant District Attorney if he conducted an investigation pertaining to certain stolen travelers checks reported by a Ms. Bayer, and Daniel indicated that he had. The judge overruled the hearsay objection and permitted Daniel to testify as to his investigation. His investigation involved an examination of the same American Express records which had previously been ruled inadmissible, and a talk of some sort with Ms. Bayer and her mother.
Against advice of counsel, defendant took the stand in his own defense. He testified that on March 12, 1979, he was cutting grass for an old crippled man when Jerry Lockhart, a friend, interrupted him; that Lockhart had a stack of what he believed to be either coupons, foreign currency or food stamps; that as he and Lockhart discussed the matter, James Carney walked up and told them he knew where they could get $500.00 for the coupons; that he and Carney left Lockhart to finish the grass and drove to 3025 Ridgelake in Metairie where he, after considerable negotiation, obtained $500.00 in cash for the checks; that he did not know the checks were stolen or their value; that he kept $200.00, gave $200.00 to Carney (since deceased) and $100.00 to Terry Lockhart.
Assignment of Error No. 1
Four elements of proof are required to convict under R.S. 14:69, receiving stolen goods:
The intentional procuring, receiving or concealing of anything of value which has been the subject of any robbery or theft under circumstances which indicate that the offender knew or had reason to believe that the thing was the subject of one of these offenses.
The element in question here is whether the checks were the subject of any robbery or theft. Defendant argues that the trial judge erred when he admitted hearsay testimony as proof that the checks had been the subject of any robbery or theft. Despite timely objections, agents Cordes and Juneau both testified that the travelers checks were stolen. Neither agent had first-hand personal knowledge of this fact but relied upon information given them by the American Express agent, Daniel.
*1101 Daniel's conclusions came from his examination of copies of certain business reports and records which he obtained from his employer, none of which were prepared by him or by his department under his direction and control. In State v. Perniciaro, 374 So.2d 1244, 1247 (La.1979), we set forth the following requirements relative to the business records exception in a criminal case:
In response to scholarly skepticism toward a broad regular course of business exception in criminal cases, which might violate a defendant's constitutional right to confrontation, see Pugh, The Work of the Louisiana Appellate Court for the 1971-1972 Term, Evidence, 33 La.L.Rev. 306, 318-19 (1973), this court recognized and applied a restrictive formulation of the common law business records exception in criminal cases. In State v. Monroe, 345 So.2d 1185 (La.1977), we stated:
"* * * Before the exception may be invoked by the State against the defendant, allowing introduction of a permanent record made in the ordinary course of business from personal knowledge of the facts recorded, or from information furnished by one having a business duty to observe and report the facts, it must be shown that the person who made the record is genuinely unavailable for testimony, that he had no strong motive to misrepresent, and that in all probability the evidence is trustworthy. * * *" 345 So.2d at 1190.
In view of the constitutional right of an accused to confront and cross-examine the witnesses against him, U.S.Const. Amend. VI; La.Const.1974, art. I, § 16, and the statutory prohibition against hearsay evidence, except as provided by law, La.R.S. 15:434, a broader business records exception for the admission of hearsay against a defendant in a criminal prosecution is unwarranted.
In Perniciaro, supra, we found that the business records exception did not apply because the requirements were not met. Nor does it apply here. The trial judge correctly refused to allow copies of the business records from American Express into evidence because no one was called to establish that the person or persons who made the records was genuinely unavailable. Further, Daniel testified that he had not seen the original documents which remained in New York. (Tr. 288). Not withstanding the trial judge's ruling excluding these records, he permitted Daniel to testify as to his "personal knowledge" because he was the investigator assigned to the case. (Tr. 279). Here the trial judge erred. Daniel's knowledge was based entirely upon an investigation of the business records heretofore mentioned and a conversation with Ms. Bayer and her mother. The records and the conversations were hearsay.
This testimony from Daniel was inadmissible. It was prejudicial to the defendant because the State's only evidence to prove that the checks were "... the subject of any robbery or theft" came from this hearsay.
Defendant's conviction must be reversed. C.Cr.P.Art. 921.
Since the assignment of error No. 1 requires reversal of defendant's conviction and sentence, his remaining assignments need not be considered. This matter will be remanded to the trial court for a new trial consistent with the foregoing opinion.
REVERSED AND REMANDED.
NOTES
[*] Judges Melvin A. Shortess, Burrell J. Carter, and Felix H. Savoie, Jr., of the First Circuit Court of Appeal participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon and Associate Justices Calogero, Marcus and Dennis.