MICHAEL E. KIRBY, Judge.

STATEMENT OF CASE

On December 29, 2004 the State charged the defendant Bennie Washington with one count each of purse snatching and armed robbery. At his arraignment on January 5, 2005 he pled not guilty to both counts. On January 31 the State amended the bill of information as to the date and the name of the victim in the robbery count, and Washington pled not guilty to the amended charge. The State amended the bill again on the day of trial, March 28, to charge Washington with attempted armed robbery, and again Washington pled not guilty to the amended charge. On that date, a twelve-person jury found him guilty as charged in the purse snatching count; it could not reach a verdict on the robbery count. The State filed a multiple bill against Washington on April 15, to which he pled not guilty, and the court reset the matter. On April 26, Washington filed a motion to quash the multiple bill, and the court denied the motion. After a hearing, the court found Washington to be a second offender and ordered a presentence investigation report. On July 8, 2005 the court sentenced Washington to serve thirty years at hard labor without benefit of probation or suspension of sentence and without good time eligibility. The court denied Washington’s motion to reconsider sentence but | ¡.granted his motion for appeal. On July 18, 2005 the court amended Washington’s sentence to delete his ineligibility for good time.

FACTS

[1]

Nita Breckenridge testified that on October 24, 2004 she lived at 1222 Antonine Street. She testified that at approximately 9:30 p.m. on that date she left her house *800 to pick up her son from work and then dropped him off at Tulane University. She stated that at approximately 11:00 p.m. she returned to her home, parking down the street from her condo because she could not get a parking place right in front. She testified that she walked down the middle of the street until she reached the sidewalk leading to her home. As she turned and started walking down the sidewalk, a man she positively identified as the defendant Bennie Washington came out from behind a tree and started following her. She stated that Washington fumbled under his shirt as he approached her, but he did not remove anything from under the shirt. She stated that she tried but failed to push her car’s panic button as Washington approached. She testified that Washington then grabbed her purse, pushing her sideways and taking the purse as she fell to the ground. Ms. Breckenridge testified that she screamed, and the man ran off toward Magazine Street. She stated that she got up and yelled after him that the purse contained nothing valuable and that she could identify him. She stated that she also chased him down Antonine Street until she lost him somewhere in the vicinity of Camp Street. She stated that she then went back home and called the police, describing | sher assailant as having short hair and a medium black complexion, and wearing a white shirt and black pants and shoes.
Ms. Breckenridge stated that she was able to get a good look at Washington’s face because she could see it plainly in the streetlight. She testified that approximately one to two hours after the purse snatching police officers told her that they had captured a suspect that they wanted her to view. She stated that they took her to the corner of Magazine and either Peni-ston or Amelia Streets, where they took a man out of the back of a police car and put lights on him. She stated that she identified the man, Washington, as the person who snatched her purse. She stated that he was wearing at the time black pants and shoes, as well as a white shirt that was not the same shirt he was wearing when he snatched her purse.
Ms. Breckenridge testified that at the time it was taken her purse contained a wallet with credit cards, her driver’s license, keys, a brush, perfume, lipstick, cigarettes, and a lighter. She testified that after she identified Washington, the officers searched him and found a pack of cigarettes that was the same type as was in her purse and a lighter which, like the one in her purse, was almost out of fluid and had the top piece broken off of it. She also testified that her purse was later found by someone in the area, but it did not contain her keys or her wallet. She did, however, find her keys in the grass near the purse.
On cross-examination, Ms. Breckenridge estimated that she saw her assailant for thirty seconds during the purse snatching and then made her identification one to two hours after the purse snatching. She reiterated that the shirt that the assailant was wearing at the time he snatched the purse was a white |/T-shirt, while Washington was wearing a shirt with a small symbol on it when she identified him.
Sgt. Anthony Micheu, IV, testified that he was on patrol on Magazine Street when he saw a man running down Amelia Street holding something like a person would hold a football. Sgt. Micheu testified that the man then turned and ran toward Peni-ston, and Sgt. Micheu began following him. At that point, he heard a broadcast concerning the purse snatching, and the man he saw running matched the description given. He testified that he saw the man run down an alleyway between two houses and jump a fence, and Sgt. Micheu called *801 for backup. Sgt. Micheu stated that he and other officers set up a perimeter of Magazine, Camp, Amelia, and Peniston Streets, and soon thereafter other officers positioned in the 900 block of Peniston apprehended a man. He testified that he went to that location and identified the man, Washington, as the man.he saw running down Amelia Street. Although Sgt. Micheu could not remember the description given of the purse snatcher, he testified that Washington fit that description.
Officers Andres Gonzalez and Ronald Bodenheimer were responding to the purse snatching call when they heard Sgt. Micheu’s call for backup. While Off. Bo-denheimer remained at the corner of Peni-ston and Magazine, Off. Gonzalez walked to the middle of the 900 block of Peniston. Off. Gonzalez stated that after approximately thirty minutes, he saw Washington, who fit the description given of the purse snatcher, walk down an alleyway next to a house into the street. Off. Gonzalez stopped Washington, who told him that he had entered the alleyway because he had to urinate. Off. Gonzalez testified that he later walked into the alley and found no wet spot on the ground. Sgt. Micheu soon arrived and identified Washington as the man he saw running down Amelia Street clutching Issomething. However, Washington was not carrying anything when he walked out of the alley. Ms. Breekenridge later arrived and identified Washington as the man who snatched her purse. Off. Gonzalez arrested Washington, advised him of his rights, and searched him, finding a wallet (apparently not the victim’s), a pack of cigarettes, a lighter, and a cell phone. Ms. Breekenridge then identified the pack of cigarettes as the same brand which had been in her purse and the lighter as the one that had been in her purse. Off. Gonzalez identified the clothing Washington was wearing at his arrest: a grey shirt with “Bourbon Street” written on the front, a white undershirt Washington had been wearing under the grey shirt, and dark pants. Off. Gonzalez testified that the cell phone seized from Washington was not identified by Ms. Breekenridge. Off. Bodenheimer testified that he heard Ms. Breekenridge state that she had gotten a good look at Washington’s eyes during the offense and recognized them when she viewed him in the 900 block of Peniston. DISCUSSION

A. Errors Patent

A review of the record reveals no patent errors.

B. Assignment of Error

By his sole assignment of error, the appellant contends that the State failed to produce sufficient evidence to support his purse snatching conviction. Specifically, he alleges that the State failed to prove that he was the person who snatched Ms. Breckenridge’s purse.
In State v. Brown, 2003-0897 (La.4/12/05), p. 22, 907 So.2d 1, 18, the Court set forth the standard for determining a claim of insufficiency of evidence:
lfiWhen reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Neal, 00-0674, (La.6/29/01), 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La.1984)).
See also State v. Sykes, 2004-1199 (La. App. 4 Cir. 3/9/05), 900 So.2d 156.
*802 The appellant was charged with and convicted of purse snatching, which is defined by La. R.S. 14:65.1 as “the theft of anything of value contained within a purse or wallet at the time of the theft, from the person of another or which in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon.” See State v. Pierre, 2004-0010 (La.App. 4 Cir. 2/25/04), 869 So.2d 246.
Here, the appellant does not dispute that a purse snatching occurred. Indeed, the evidence supports a finding of purse snatching because Ms. Breckenridge’s purse was snatched from her by an assailant who pushed her down and grabbed the purse as she fell: The appellant insists, however, that the evidence was insufficient to support his conviction because the State did not prove that he was the person who snatched the purse. In State v. Holmes, 2005-1248, pp. 8-9 (La.App. 4 Cir. 5/10/06), 931 So.2d 1157, 1162, this court discussed the standard to be used when an appellant disputes his identity as the perpetrator of an offense:
, When a key issue at trial is whether the defendant was the perpetrator of the crime, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof beyond a reasonable doubt. State v. Bright, 1998-0398 (La.4/11/00); 776 So.2d 1134, 1147. The fact-finder weighs the respective credibilities of the witnesses, and a reviewing court will |7geherally not second-guess those determinations. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). However, the touchstone of Jackson v. Virginia is rationality and that “irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.” State v. Mussall, 523 So.2d 1305, 1310 (La.1988). The trier of fact makes credibility determinations, and may, within the bounds of rationality, accept or reject the testimony of any witnesses. State v. Hampton, 98-0331 (La.4/23/99); 750 So.2d 867, 880.
The appellant argues that the evidence does not negate the possibility that the victim misidentified him as the perpetrator. He argues that the victim did not get an adequate opportunity to observe him during the purse snatching, and thus her identification is not credible. In support, he cites various factors which he maintains shows that the victim’s identification of him as the purse snatcher is suspect.
First, the appellant cites to the discrepancy between the time the victim testified the purse snatching occurred and the time Sgt. Micheu testified he first saw the man running down the street. The transcript indicates that the victim testified that the offense happened at approximately 11:00 p.m. However, Sgt. Micheu did not explicitly testify that he saw the man running down Amelia Street sometime between midnight .and 2:00 a.m. Instead, at the beginning of Sgt. Micheu’s testimony the prosecutor asked him where he was between the hours of midnight and 2:00 a.m. In any event, the victim testified that the offense occurred at “roughly” 11:00 p.m., and further she testified that she briefly chased the offender down the street then turned back and called the police. Sgt. Micheu testified that it was just after he saw the appellant running down Amelia Street that he got the call about the robbery. Thus, whatever time the offense actually |soccurred, Sgt. Micheu received the broadcast about the purse snatching right after seeing the appellant running down the street. Contrary to his asser *803 tions, a long period of time did not elapse between the purse snatching and Sgt. Mi-cheu’s discovery of the appellant fleeing down Amelia Street.
In addition, the appellant points out that he was captured by Off. Gonzalez thirty to forty-five minutes after Sgt. Micheu saw the man fleeing down the street; thus, he argues that he could not have been the man Sgt. Micheu saw. Nonetheless, Off. Gonzalez testified that he positioned himself half-way down the block and stayed there for thirty minutes before the appellant appeared from between two houses. Off. Gonzales testified that during that time no one walked into the block, and the alleyway from which the appellant emerged dead-ended in a fence. Thus, Off. Gonzales would have seen the appellant if he had entered the block just prior to his capture.
The appellant points out that the man Sgt. Micheu saw running down the street was carrying an object, yet the appellant was not carrying anything when he was apprehended by Off. Gonzalez. However, thirty minutes had passed, and the appellant had jumped at least one fence between the time Sgt. Micheu saw him on Amelia Street and Off. Gonzalez captured him in the next block. Thus, he had ample time and opportunity to discard anything he might have been carrying.
The appellant points out that the victim admitted she only saw the perpetrator for thirty seconds during the purse snatching, and when she observed the appellant two hours later she viewed only him, when he was standing outside the police car, bathed in lights. Nonetheless, one-on-one identifications have been found to be reliable where the suspect is captured and the victim views the suspect within a short time of the crime. One-on-one identification procedures assure 19reliability and foster the prompt release of innocent suspects. State v. Robinson, 404 So.2d 907 (La.1981); State v. Lewis, 2004-0227 (La.App. 4 Cir. 9/29/04), 885 So.2d 641[2]. Here, the victim testified that she saw the assailant’s face clearly because of the nearby street light. She identified the appellant one to two hours after the purse snatching. The fact that the appellant was the only person she viewed would not invalidate her identification of him.
The appellant next points to a discrepancy between the shirt worn by the purse snatcher and that worn by him when he was captured. The victim testified that the assailant was wearing a white T-shirt with sleeves, but when the appellant was captured he was wearing a grey shirt with a collar, under which he wore a white T-shirt. The victim also testified, however, that it appeared that the perpetrator had something bunched under his T-shirt, and that the perpetrator had his hand under his shirt as he approached her. In addition, Sgt. Micheu testified that the person he saw running down the street was wearing a white shirt. As noted above, approximately thirty minutes elapsed between the time Sgt. Micheu saw the man jump the fence and Off. Gonzalez apprehended the appellant a block away, and during that time he would have had ample opportunity to take the grey shirt out from under his white T-shirt and put it on over the white shirt.
The appellant next points to the fact that the victim was never able to recover her wallet or her keys. However, the victim testified that she found the keys near where her purse had been abandoned, which was in a yard somewhere in the area. The appellant then notes that the items from the purse that he was *804 accused of keeping, the package of cigarettes and the broken lighter, were not so distinctive that the victim could identify them as having been in the purse when it was stolen. Nonetheless, the cigarettes found in the appellant’s pocket were the same brand as those in the purse when it |inwas stolen, and the lighter also found in his pocket had the top broken off and was almost out of lighter fluid, just like the lighter that was in the victim’s purse when it was stolen.
The appellant also notes that it was unknown how the officers knew to look for the cigarettes and the lighter when the victim did not mention them until after she had identified the appellant at the scene. However, the officers did not arrest the appellant and search him incident to that arrest until after the victim had identified the appellant as the assailant.
The jury was aware of the discrepancy (if any) in the time frame given by the victim and the officers and the discrepancy in the shirt worn by the perpetrator, and still it chose to believe the testimony of the victim and the officers over the appellant’s theory that he was in the alleyway only because he needed to urinate. Indeed, Off. Gonzalez did not see anyone enter the block in the thirty minutes he stood there during the perimeter search, and he also testified that he did not find a wet spot on the ground in the alleyway to corroborate the appellant’s statement. A factfinder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence. State v. Huckabay, 20001082 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093; State v. Harris, 99-3147 (La.App. 4 Cir. 5/31/00), 765 So.2d 432. Given the facts of this case, we find the jury did not abuse its discretion by finding the identifications of the victim and Sgt. Micheu credible. Thus, there was sufficient evidence to negate any possibility of misidentification, and the evidence presented at trial supported the jury’s finding that the appellant was the person who snatched the victim’s purse. This assignment of error has no merit.
| ^Accordingly, we affirm the defendant’s conviction and sentence.
AFFIRMED.

. Because the jury could not reach a verdict as to the second count, attempted armed robbery, evidence pertaining to this count has not been included in the statement of the facts. The victim in the attempted armed robbery count was Matthew Davis.

. Writ den. 2005-0233 (La.5/6/05), 901 So.2d 1095.